COREGIS INSURANCE COMPANY, an Indiana corporation, Plaintiff,

v.

CAMICO MUTUAL INSURANCE COMPANY, a California corporation, and Urbach, Kahn & Werlin, P.C., a New York professional corporation, Defendants.

and Related Claims

No. CV 96–2706 ABC (BQRx).

United States District Court, C.D. California.

Feb. 10, 1997.

Jeffrey Charlston, Robert Hoffman, Charlston, Revich & Williams, Los Angeles, CA, for plaintiff.

Andrew Waxler, Christina Bull Arndt, Luce, Forward, Hamilton & Scripps, Los Angeles, CA, for defendant Urbach, Kahn & Werlin, P.C.

Michael Kerr, Jacqueline Brady, Mayer, Brown & Platt, Los Angeles, CA, for third party defendant Accountants Liability Assurance Co.

Scott Kolod, Stephen Lindsley, Kolod & Wager, San Diego, CA, for defendant Camico Mut. Ins. Co.

ORDER RE: (1) CAMICO'S MOTION FOR PARTIAL SUMMARY
(2) COREGIS'S MOTION FOR SUMMARY JUDGMENT

COLLINS, District Judge.

Camico's motion for partial summary judgment and Coregis's motion for summary judgment came on regularly for hearing before this Court on February 10, 1997. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that Camico's

motion for partial summary judgment is DE-NIED and Coregis's motion for summary judgment is GRANTED.

## I. Background

### A. Procedural Background

Plaintiff COREGIS INSURANCE COMPANY ("Coregis") filed a Complaint against Defendants CAMICO MUTUAL INSURANCE COMPANY ("Camico") and URBACH, KAHN & WERLIN, P.C. ("UKW") for declaratory relief on April 16, 1996. Coregis seeks a judicial determination that it is not liable to Camico for amounts Camico expended in defending and settling the claims asserted in a now dismissed action entitled *Gindi v. London*[1] under a policy of Accountants' Professional Liability Insurance Policy issued by Mt. Airy Insurance Company ("Mt.Airy") (a predecessor to Coregis) to the accounting firm of UKW. Coregis seeks a judicial declaration that Camico was and is the only insurance carrier obligated to provide accountant Edward London ("London"), a partner of UKW, with coverage for the claims asserted against him in the Gindi Action.

In response to this Court's Order to Show Cause, Coregis filed a First Amended Complaint, also seeking declaratory relief, on April 30, 1996. On June 10, 1996, Camico filed a Counterclaim against Coregis for equitable indemnity, express indemnity, equitable contribution, breach of the implied covenant of good faith and fair dealing, declaratory relief, and negligence. On the same date, Camico also filed a Third Party Complaint against Accountants Liability Assurance Company[2] ("ALAC") and a Cross-claim against UKW. Camico's Third Party Complaint and Cross-claim allege the same causes of action asserted in its Counterclaim against Coregis.

On July 1, 1996, Coregis filed a motion to dismiss Camico's counterclaims for express indemnity, breach of the implied covenant of good faith and fair dealing, and negligence, as well as to strike Camico's counterclaim for punitive damages. In an August 9, 1996 Order, the Court GRANTED Coregis' motion to dismiss Camico's counterclaims for express indemnity and negligence, DENIED Coregis's motion to dismiss Camico's counterclaim for breach of the implied covenant of good faith and fair dealing, and DENIED, without prejudice, Coregis's motion to strike Camico's prayer for punitive damages.

On October 18, 1996 ALAC filed a motion to compel arbitration of Camico's subrogation claims and to dismiss or stay Camico's remaining third-party complaint claims. In a November 18, 1996 Order, the Court DENIED ALAC's motion.

On January 7, 1997, Camico filed a motion for partial summary judgment in which it sought to have the Court issue an order finding that Coregis had a duty to provide a defense to London in the Gindi Action. On January 17, 1997, Coregis filed an opposition. On February 3, 1997, Camico filed a reply.

On January 17, 1997, Coregis filed a motion for summary judgment in which it sought to have the Court issue an order finding that Coregis has no obligation to reimburse Camico for any sums expended by Camico in defending and/or settling claims asserted against London in the Gindi Action. On January 27, 1997, Camico filed an opposition. On January 31, 1997, Coregis filed a reply.

### B. Factual Background

In essence, this case revolves around whether or not Coregis had a duty to provide a defense to London in the Gindi Action. Most of the facts relevant to the two instant motions are not subject to dispute.

Beginning in or about January 1, 1984, London began providing accounting services to Jack E. Gindi ("Gindi") and his various partnerships. At that time, London was

---

**1.** Los Angeles Superior Court Case No. SC024960. Hereinafter, the case of *Gindi v. London* is referred to as the "Gindi Action."

**2.** According to Camico, ALAC issued an accountants' professional indemnity policy to UKW in or around October 1994. The policy is an express policy over certain coverages provided by Coregis, and it may provide coverage to its insureds for claims that are not covered by the Coregis policies. *See* Third Party Complaint at ¶ 14, filed previously in this action.

working through the accounting offices of London & Heisman. According to Gindi, between the period of January 1, 1984 and July 31, 1988, he relied completely on London to provide competent accounting services. In 1988, the London & Heisman firm dissolved, and London joined the firm of UKW.

On July 9, 1993, Gindi filed a Complaint against London alleging causes of action for negligence, intentional misrepresentation, fraudulent concealment, breach of fiduciary duty, conspiracy and negligent misrepresentation ("Original Gindi Complaint").[3] *See* Gindi Action Complaint, attached as Exhibit A to both parties' motions for summary judgment. Gindi alleged that from 1984 through November 15, 1991, he and Joseph Dabby ("Dabby") were partners in seven California partnerships, and that between January 1, 1984 and January 31, 1988, London provided accounting services to the partnerships.[4] *See* Original Gindi Complaint at ¶ 8, 9. Gindi further alleged that his partner Dabby converted monies from the real estate partnerships, improperly used partnership assets to pay for personal liabilities and paid himself excessive compensation from partnership funds. Gindi Action Complaint at ¶¶ 11, 16, 17. Gindi also alleged that London fraudulently concealed Dabby's purported conversion of partnership assets through misrepresentations to Gindi and improper bookkeeping entries in partnership books and records. *Id.* In addition, Gindi alleged that London conspired with Dabby to defraud Gindi. Gindi further alleged that he would not have continued to invest in the partnerships if he had known of the conversion of funds by Dabby and London's purported fraud in concealing the conversion of funds. Gindi Action Complaint at § 19. Gindi claimed that if London had acted prop-erly and disclosed Dabby's purported misconduct, Gindi would not have invested significant funds in the partnerships and would not have lost significant sums.

In July 1993, London tendered the Gindi Action to Camico for defense and indemnification costs. Camico issued professional liability coverage to London & Heisman between July, 1, 1986 to October 31, 1988. The Camico policy was a "claims made" policy. London had also purchased "tail" coverage which covered him for "claims made" in 1993 that were premised upon acts, errors and omissions which occurred between 1986 and 1988. *See* Camico policy, attached to Camicols motion for summary judgment as Exhibit B. Camico assumed defense and indemnification obligations for the claims asserted in the Original Gindi Complaint.

At the time the Gindi Action was filed on July 9, 1993, London was also insured under an Accountants' Professional Liability Policy issued to UKW by International Insurance Company ("International") which was in effect for the policy period November 1, 1992 through November 1, 1993. *See* International Policy, attached to Coregis's motion as Exhibit D. The International Policy provided coverage for claims made against those who were insured under the policy, provided that the claim was both made against the insured and reported to International during the November 1, 1992 to November 1, 1993 policy period or sixty (60) days thereafter. *Id.* London was an insured person under the International Policy for acts, errors and omissions committed by him prior to joining UKW, including the time period alleged in the Gindi Action, subject to the policy's terms, conditions, and exclusions. *Id.* In order for London to have obtained insurance

---

**3.** Gindi's attorney at the time of the filing of the Original Gindi Complaint was Jonathan D. Freund.

**4.** There is some dispute as to when the Original Gindi Complaint alleges that the purported misconduct occurred. Camico asserts that "[i]n his Original Complaint, Mr. Gindi exclusively asserted claims relating misconduct which occurred between January 1, 1984 to July 31, 1988." Camico's Statement of Uncontroverted Facts No. 5 (citing Original Gindi Complaint at 3:12–14, 4–

5:28–1, 8–9:28–1, 10:4–7). In contrast, Coregis contends that "[t]he Original Complaint alleges that at all relevant times up until November 15, 1991, Gindi and Dabby were partners in the California partnerships that are the subject of the Complaint. It appears from the Complaint that purported misconduct of Mr. Dabby occurred through November 15, 1991." Coregis's Separate Statement of Genuine Issues of Material Fact at No. 5 (citing Original Gindi Complaint at ¶¶ 8, 23).

benefits under the International Policy for the claims asserted in the Gindi Action, he was required to report the claim to International during the November 1, 1992 to November 1, 1993 policy period or sixty (60) days thereafter. London never tendered the Gindi Action to International for defense and indemnification during this period or at any time. *See* Declaration of Rick Andrews, filed with Coregis's motion. London did not tender the Gindi claim to International even though on September 15, 1993, London served a verified response to Gindi's form interrogatories which stated that he "was a partner during the time periods alleged in the complaint at both London & Heisman and Urbach, Kahn & Werlin." *See* London's Interrogatory Response No. 2.11, filed with Coregis's motion as Exhibit E.

On January 1, 1993, Mt. Airy Insurance Company ("Mt.Airy") assumed the role of International under the International Policy pursuant to a novation of the insurance contract. *See* Andrews Decl. at ¶ 3. On November 14, 1994, Mt. Airy issued its own policy of Accountants' Liability Insurance to UKW for the policy period November 1, 1994 to November 1, 1995 ("Mt. Airy Policy"). *See* Exhibit H, filed with Coregis's motion. Like the International Policy, the Mt. Airy Policy provided coverage, subject to conditions and exclusions, for claims that were both first made and reported to the insurance carrier during the policy period. *Id.*

After pursuing litigation on the Original Gindi Complaint for some time, Gindi chose to substitute attorney Christopher Wilson ("Wilson") as his new attorney. On or about June 10, 1994, Wilson substituted into the Gindi Action. Wilson Declaration at ¶ 3, filed

with Camico motion as Supplemental Exhibit G.

On April 5, 1995, sixty (60) days before the scheduled trial in the Gindi action, Wilson and defense counsel for London stipulated to the filing of an Amended Complaint ("Amended Gindi Complaint"). *See* Stipulation, filed with Coregis's motion as Exhibit F. The Amended Gindi Complaint alleges the same causes of action as the Original Gindi Complaint—negligence, intentional misrepresentation, fraudulent concealment, breach of fiduciary duty, conspiracy and negligent misrepresentation—and for the most part, each cause of action is predicated on the same alleged misconduct by London.[5] *See* Amended Gindi Complaint, filed with Coregis's motion as Exhibit G, as compared to Original Gindi Complaint.

The principal difference between the two complaints is that the Original Gindi Complaint alleged that London engaged in the acts complained of from January 1, 1984 until July 31, 1988 and the Amended Gindi Complaint alleges that London engaged in the acts complained of from January 1, 1984 until December 31, 1992.[6] This extension of the dates of the purported misconduct from July 31, 1988 to December 31, 1992 is reflected in four of the six causes of action.[7] However, there are no new allegations in the Amended Gindi Complaint in support of the extension of the time period covering the alleged misconduct; the purported continuing misconduct that allegedly occurred between July 31, 1988 and December 31, 1992 appears to be based on the same acts that were the subject of the Original Gindi Complaint. *Id.*

**5.** Whether the two complaints are substantively different is a subject of dispute between the parties. Camico asserts that "[t]he Amended Complaint added numerous references and allegations of additional claims based upon new additional alleged misconduct occurring in 1991, after the Camico coverage period." *See* Camico's Statement of Uncontroverted Facts No. 10 (citing Amended Gindi Complaint at 3:23, 5:21, 9:16–24, 10:15, 11:25). In contrast, Coregis contends that "[t]he Amended Complaint contains very few changes from the original complaint and there are not 'numerous' references and allegations of additional claims based upon new additional alleged misconduct occurring in 1991." *See* Coregis's Separate

Statement of Genuine Issues of Material Fact in Opposition to Camico's motion at No. 10 (citing ¶¶ 9, 13, 16, 29, 34, and 40).

**6.** The Court notes that in both complaints, the dates are proceeded by the words "on or about."

**7.** The extension of the dates of the purported misconduct (from July 31, 1988 to December 31, 1992) is reflected in the first cause of action (negligence), the second cause of action (intentional misrepresentation), the fifth cause of action (conspiracy), and the sixth cause of action (negligent misrepresentation)

The other major difference between the two complaints is that the fourth cause of action, for breach of fiduciary duty, is expanded in the Amended Gindi Complaint. The Original Complaint alleges that:

> As an accountant to the partnerships, Defendant Edward London was in a fiduciary relationship with Gindi and owed Gindi a duty of trust and confidence in all matters relating to the partnerships. By engaging in the above-described conduct, Defendant Edward London breached and violated his fiduciary duties and breached and violated his relationship of confidence and trust of Gindi.

*See* Original Gindi Complaint at ¶¶ 29–30. The Amended Gindi Complaint elaborates on this cause of action and alleges that:

> [a]s an accountant to the partnerships and as tax accountant for Gindi individually, defendant Edward London was in a fiduciary relationship with Gindi and owed Gindi a duty of loyalty and confidence in all matters relating to the partnerships. This duty of loyalty continued even when Gindi became a former client. By engaging in the above-described conduct and in 1991 threatening to disclose confidences about Gindi if Gindi sued Dabby ["the alleged 1991 misconduct"], Defendant Edward London breached and violated his fiduciary duties and breached and violated his relationship of confidence and trust with Gindi.

*See* First Amended Complaint ¶¶ 29–30.

The Amended Gindi Complaint was prepared and filed by Wilson. According to Wilson, "the most clearly new and additional claim" is the alleged 1991 misconduct by London.[8] Wilson Decl. at ¶ 4. Wilson explains that the alleged 1991 misconduct "had its basis in a document received by me in the other case I handled concerning the pertinent partnerships ... [and][a]s far as I know, attorney Freund had no access" to this information. *Id.* Additionally, Wilson explains that "[b]esides the new and additional claim concerning breach of fiduciary duty, the Amended Complaint reflected conclusions ... that breaches of applicable standards of care occurred on dates after July 31, 1988, the last date mentioned in the original Complaint."[9] *Id.* at ¶ 6.

On June 5, 1995, London tendered the Amended Gindi Complaint to Mt. Airy. *See* Declaration of Rick Andrews at ¶ 4, filed with Coregis's motion for summary judgment ("Andrews Decl."). On September 12, 1995, Coregis, the successor to Mt. Airy, advised London that the claims asserted in the Gindi Action were not covered under the Mt. Airy Policy. *See* Letter from Coregis to London, filed with Coregis's motion as Exhibit I. Coregis provided several reasons in support of its determination that London's claims were not covered by the Mt. Airy Policy. *Id.* First, Coregis advised London that no coverage existed because the claims being sued upon in the Amended Gindi Complaint were not first made during the November 1, 1994 to November 1, 1995 Mt. Airy Policy period, but instead when the Original Gindi Complaint was filed in July, 1993 when the International Policy was in effect, and therefore London did not timely tender the Gindi Action since no claim was reported to International during the International policy period. *Id.* Second, Coregis advised London that pursuant to the terms and conditions of the Mt. Airy Policy, a claim under the policy means a demand received by the insured for damages, that "two or more CLAIMS arising out of a... series of related acts, errors or omissions shall be treated as a single CLAIM" and that "all such CLAIMS whenever made shall be considered first made on the date on which the earliest CLAIM arising out of such act, error or omission was first made...", and therefore because the claims asserted against London in the Amended Complaint "arise out of a series of related acts, errors or omissions" from the original complaint, there was no coverage under the Mt. Airy policy for the Amended Complaint. *Id.* And third, Coregis advised London that the prior notice exclusion of the Mt. Airy Policy excluded coverage since London knew of the claims asserted against him in the Gindi action prior to the November 1, 1994 effective date of the Mt. Airy Policy. *Id.*

---

**8.** The Court overrules Coregis's evidentiary objection to ¶ 4 of the Wilson Declaration.

**9.** The Court overrules Coregis's evidentiary objection to ¶ 6 of the Wilson Declaration.

In November 1995, the Gindi Action was settled. Camico claims that it expended the $750,000 limits of its policy to Heisman & London to defend and settle the Gindi Action. *See* Camico Counterclaim at ¶ 28, filed with Coregis's motion as Exhibit C. On December 8, 1995, the Gindi Action was dismissed with prejudice. *See* Exhibit J, filed with Coregis's motion.

Coregis has not contributed any funds towards the defense or settlement of the Gindi Action. On April 16, 1996, Coregis filed a declaratory relief action to obtain an adjudication that it has no obligation to contribute or reimburse any expenses paid by Camico to defend and/or to settle the Gindi Action.

## II. Legal Standards

### A. Summary Judgment Standard

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). Furthermore, the court must view the evidence presented to establish these elements "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. at 2553–54. "Instead, ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e) (emphasis added) A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. Id. at 248, 106 S.Ct. at 2510; *Griffeth v. Utah Power & Light Co.*, 226 F.2d 661, 669 (9th Cir.1955).

### B. California Insurance Law

California law applies to this diversity action. *See Continental Casualty Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir. 1985); *Franceschi v. American Motorists Insurance Company*, 852 F.2d 1217, 1219 (9th Cir.1988). Under California law, an insurer owes a very broad duty to defend to its insured. The Supreme Court of California stated in *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993) (*"Montrose I"*), and more recently in *Montrose Chemical Corp. v.*

*Admiral Ins. Co.,* 10 Cal.4th 645, 42 Cal. Rptr.2d 324, 913 P.2d 878 (1995) (*"Montrose II "*) that when a suit against an insured alleges a claim that "potentially" or even "possibly" could subject the insured to liability for the covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to "undisputed facts," that the claim cannot be covered. *Montrose I,* 6 Cal.4th at 299–300, 24 Cal.Rptr.2d 467, 861 P.2d 1153; *Montrose II,* 10 Cal.4th at 661–662 n. 10, 42 Cal.Rptr.2d 324, 913 P.2d 878.

In determining whether an insurer has a duty to defend, one must first compare the allegations of the complaint with the terms of the policy. *Montrose I,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (citations omitted). Then, it should be ascertained whether facts which are not alleged in the complaint, but known by the insurer at the inception of the lawsuit, reveal a possibility that the claim is covered by the policy. *Id.* A duty to defend may therefore exist even though the face of the complaint does not reflect a potential for liability under the policy. *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 276, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

California courts look to all facts available to the insurer at the time the insured tenders its claim for a defense. "[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose I,* 6 Cal.4th at 299, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (citing *Gray,* 65 Cal.2d at 275–276, 54 Cal.Rptr. 104, 419 P.2d 168). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann. Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993) (citation omitted)

The duty to defend, however, is not without limits. Specifically, the duty to defend is limited by " 'the nature and kind of risk covered by the policy.' " *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.,* 9 Cal.4th 27, 39, 36 Cal.Rptr.2d 100, 884

P.2d 1048 (1994) (citing *Gray,* 65 Cal.2d at 275, 54 Cal.Rptr. 104, 419 P.2d 168). " ' [T]he insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.' " *Id.* (citing *Gray,* 65 Cal.2d at 276 n. 15, 54 Cal.Rptr. 104, 419 P.2d 168; *Montrose I,* 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153). Stated another way, "[w]here there is no potential for the third party to recover on a covered claim, there is no duty to defend." *Devin v. United Services Auto. Assn.,* 6 Cal. App.4th 1149, 1157, 8 Cal.Rptr.2d 263 (1992) (citations omitted).

An insurer may move for summary adjudication that no potential liability exists and therefore that no duty to defend exists where the evidence establishes as a matter of law that there is no coverage. *Montrose I,* 6 Cal.4th at 298, 24 Cal.Rptr.2d 467, 861 P.2d 1153. Specifically, an insurer may move for summary adjudication that no duty to defend exists on the grounds that the claim is specifically excluded by the policy. *See e.g. Vann v. Travelers Companies,* 39 Cal.App.4th 1610, 46 Cal.Rptr.2d 617 (1995).

It is well-established California law that "[a]n insurer may select the risks it will insure and those it will not and a clear exclusion will be respected." *Legarra v. Federated Mutual Insurance,* 35 Cal.App.4th 1472, 1479, 42 Cal.Rptr.2d 101 (1995) (citing *Howell v. State Farm Fire & Casualty Co.* 218 Cal.App.3d 1446, 1467, 267 Cal.Rptr. 708 (1990)). " 'Courts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated.' " *Id.* (quoting *Blumberg v. Guarantee Ins. Co.,* 192 Cal.App.3d 1286, 1296, 238 Cal.Rptr. 36 (1987)). When a policy clearly excludes coverage, the court "will not indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage." *Titan Corp. v. Aetna Casualty & Sur. Co.,* 22 Cal. App.4th 457, 469, 27 Cal.Rptr.2d 476 (1994). "An insurer is entitled to limit its coverage to defined risks, and if it does so in clear language, [the court] will not impose coverage where none was intended." *Id.*

■ Where an insurer argues that a policy exclusion precludes a finding of a duty to defend, for the insurer to obtain summary judgment, it must present undisputed facts that eliminate any possibility of coverage. *Vann,* 39 Cal.App.4th at 1615, 46 Cal.Rptr.2d 617. The insurer cannot rely on policy exclusions where there is a factual dispute as to whether the exclusion applies. *Id.*

When examining the language of an insurance policy, California law dictates that "any ambiguities or uncertainties in insurance contracts are construed against the insurance company." *Hanson v. Prudential Ins. Co. of America,* 783 F.2d 762, 764 (9th Cir.1985) (citations omitted). In particular, exclusionary clauses "must be clearly stated to apprise the insured of the effect of those exceptions." *Franceschi,* 852 F.2d at 1219 (citing *Gray v. Zurich Insurance Co.,* 65 Cal.2d at 269, 54 Cal.Rptr. 104, 419 P.2d 168). "An insurer cannot avoid its primary duty to provide coverage by incorporating into the insurance contract an exclusionary clause that is ambiguous." *Continental Casualty Co.,* 763 F.2d at 1079. In addition, "[e]xclusionary clauses in insurance contracts are construed narrowly against the insurer." *Franceschi,* 852 F.2d at 1219 (citing *State Farm Mutual Automobile Insurance Co. v. Partridge,* 10 Cal.3d 94, 101–102, 109 Cal.Rptr. 811, 514 P.2d 123 (1973)).

It is against this legal backdrop that the Court analyzes both Camico's and Coregis's motions for summary judgment.

### III. Analysis

### A. Camico's Motion for Partial Summary Judgment

■ Camico's motion for partial summary judgment seeks an adjudication that Coregis owed London a duty to defend on the grounds that the allegations in the Amended Gindi Complaint create a "potential" for coverage under the Mt. Airy policy assumed by Coregis. Camico's motion at 7–8. Camico

lays out a logical argument as to why there is a potential for coverage under the Mt. Airy policy. First, Camico points out that in order to trigger coverage under the Mt. Airy policy, there must be a "claim." A claim is defined in the Mt. Airy Policy as follows:

A demand received by the INSURED for DAMAGES including but not limited to the service of suit or institution of arbitration proceedings against the INSURED.

*See* Mt. Airy Policy, attached to Camico's motion as Exhibit D. Citing to the Original Gindi Complaint filed in July 1993 and the Amended Gindi Complaint filed in April 1995, Camico contends that it is uncontested that the insured (London) was served with a lawsuit filed by Gindi which sought money damages. Second, Camico notes that the insuring grant of the Mt. Airy policy, which was in effect from November 1, 1994 to November 1, 1995 indicates that coverage will only be provided for "CLAIMS first made against any INSURED during the POLICY PERIOD." *Id.* Camico asserts that the claim against London was first made during the policy period as the Amended Gindi Complaint contained new allegations of misconduct occurring in 1991 which had not been a part of any prior pleading, and that counsel for Gindi filed and served the Amended Gindi Complaint on April 5, 1995. Third, Camico asserts that the claim was timely reported to Coregis. The insuring grant of the Mt. Airy policy requires that the claims be "reported to the Company in writing during the POLICY PERIOD or within sixty days thereafter . . . [.]" *Id.* Camico argues that the fact that London timely reported the claim is undisputed as is evidenced by the series of letters referencing London's claim, dated between August 11, 1995 and September 11, 1995.[10] *See* Letters, attached to Camico's motion as Exhibit F. Fourth, Camico asserts that London's claim falls within the coverage grant because the Mt. Airy policy provides that there is only coverage for " . . . any act, error

---

10. The Court notes that Coregis has filed an evidentiary objection to the admissibility of the letters attached to Camico's motion as Exhibit F. The Court declines to rule on this objection as the Court does not rely on this evidence in reaching its decisions as to the instant motions. The Court notes that Coregis does not dispute that London reported a claim during its policy period in that Coregis states in its own motion that "[o]n June 5, 1995, London tendered the Amended Complaint in the Gindi action to Mt. Airy." Coregis's motion at 8 (citing Andrews Decl. at ¶ 4.)

or omission, occurring subsequent to the Retroactive Date (if any)...[.]" *See* Mt. Airy Policy. Citing to Item 7 of the Declaration page of the Mt. Airy policy, which states there is "Full Prior Acts" coverage, Camico contends that because there is no retroactive date limitation in the Mt. Airy policy, Coregis cannot raise a coverage defense based upon any retroactive date limitation. *Id.* Based on the foregoing, Camico argues that, as a matter of law, the allegations of the Amended Gindi Complaint create a "potential" for coverage under the Mt. Airy policy.

In response, Coregis raises several arguments in support of its position that, as a matter of law, there is no coverage under the Mt. Airy policy for the claims asserted against London in the Gindi Action. One of Coregis's arguments is that pursuant to Exclusion D of the Mt. Airy Policy ("the Prior Notice Exclusion"), the claims asserted against London are specifically excluded from coverage.[11]

The Prior Notice Exclusion of the Mt. Airy Policy provides that "THIS POLICY DOES NOT APPLY":

> (D) to any CLAIM arising out of any act, error or omission occurring prior to the effective date of this policy if any INSURED at the effective date knew or could have reasonably foreseen that such act, error or omission might be expected to be the basis of a CLAIM or suit[.]

*See* Mt. Airy Policy.

Recognizing that California law dictates that any ambiguities in the language of an insurance policy are construed against the insurer, *Hanson,* 783 F.2d at 764, and that an exclusion must be "clearly stated to apprise the insured of the effect of [the exclusion]," *Franceschi,* 852 F.2d at 1219, the

Court first evaluates the language of the Prior Notice Exclusion before applying it in the instant matter. In doing so, the Court finds that the language contained in the Prior Notice Exclusion is clear and unambiguous.

First, the Court notes that none of Camico's papers filed in connection with this matter even raise the possibility that the Prior Notice Exclusion is ambiguous. Second, the Court, on its own reading of the exclusion, finds that the language is perfectly clear as to what is excluded. And third, the Court notes that the same policy language appearing as a "condition precedent for coverage" has been deemed to be unambiguous by a California court. In *Phoenix Ins. Co. v. Sukut Construction Co.,* 136 Cal.App.3d 673, 676, 186 Cal.Rptr. 513 (1982), the court analyzed a professional liability policy provision which stated that coverage existed for claims arising from circumstances prior to the effective date of the policy provided that the insured "at the effective date of the insurance did not know or could not have reasonably foreseen that such acts or omissions might be expected to be the basis of a claim or suit." When one of the parties argued the phrase "might be expected to be the basis of a claim or suit" was ambiguous, the court determined that the phrase is "perfectly clear." *Phoenix Ins. Co.,* 136 Cal.App.3d at 677, 186 Cal.Rptr. 513.

Having found the Prior Notice Exclusion is unambiguous, the Court now turns to the key inquiry: whether this exclusion precludes, as a matter of law, a finding of a "potential" for coverage for London's claim under the Mt. Airy Policy. Put another way, the relevant inquiry before the Court is whether the undisputed facts eliminate any possibility of coverage. The Court concludes that the an-

---

11. The Court notes that "prior notice exclusions" such as Exclusion D of the Mt. Airy Policy are properly decided on summary judgment and can preclude any potential coverage. *See International Ins. Co. v. Peabody Intern. Corp.,* 747 F.Supp. 477 (N.D.Ill.1990) (summary judgment granted to insurer based on prior notice exclusion which excluded potential for coverage because of knowledge of insured of the basis of malpractice action prior to effective date of policy period); *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218 (5th Cir. 1986) (insurer granted summary judgment since

insured attorneys had knowledge of the circumstances that eventually did result in a claim being made and "it was not necessary to defeat coverage that suit have been filed"); *Truck Ins. Exchange v. Ashland Oil, Inc.,* 951 F.2d 787 (7th Cir.1992) (summary judgment granted and declaration of non-coverage issued based on prior notice exclusion); *Pelagatti v. Mt. Airy Insurance Company,* 1996 WL 184474, 1996 U.S. Dist. LEXIS 4963 (E.D.Pa.1996) (summary judgment granted to Mt. Airy based on the *identical* notice exclusion contained in the Mt. Airy policy at issue in the instant matter).

swer to these questions is unequivocally "yes."

Mt. Airy's Prior Notice Exclusion consists of two clauses. First, for the exclusion to apply, the claim at issue must arise "out of any act, error or omission occurring prior to the effective date of this policy." As indicated above, a "claim" is defined under the policy to include "[a] demand received by the INSURED for DAMAGES." The claim at issue in this matter is Gindi's demand for damages (as set out in the Amended Gindi Complaint filed in April of 1995) arising out of London's alleged acts of negligence, intentional misrepresentation, fraudulent concealment, breach of fiduciary duty, conspiracy and negligent misrepresentation in his capacity as an accountant in his dealings with Gindi. It is undisputed that the Original Gindi Complaint alleges misconduct by London spanning the years 1984 to 1988 and that the Amended Gindi Complaint alleges misconduct by London spanning the years 1984 to 1992. It is also undisputed that the effective date of the Mt. Airy policy is November 1, 1994. Because it is clear to the Court that on the basis of undisputed facts, whatever misconduct may have occurred must have occurred "prior to the effective date of [the Mt. Airy] policy[,]" the first condition of the Prior Notice Exclusion has been met.

The second condition of the Prior Notice exclusion requires that the "INSURED at the effective date knew or could have reasonably foreseen that such act, error or omission might be expected to be the basis of a CLAIM or suit." As applied to this case, the second condition requires that London, on November 1, 1994, knew or could have reasonably foreseen that the allegations in the Amended Gindi Complaint of negligence, intentional misrepresentation, fraudulent concealment, breach of fiduciary duty, conspiracy and negligent misrepresentation in his capacity as an accountant in his dealings with Gindi might be the basis of a claim or suit.

On the basis of the undisputed facts on the record, it is inconceivable to the Court how London, on November 1, 1994, could not have known or reasonably foreseen that his alleged acts of negligence, intentional misrepresentation, fraudulent concealment, breach of fiduciary duty, conspiracy and negligent misrepresentation in his capacity as an accountant in his dealings with Gindi might be the basis of a claim or suit. The Original Gindi Complaint was filed and served on London in July 1993, more than one year before the November 1, 1994 effective date of the Mt. Airy Policy. Clearly then, in July of 1993, London was aware that the acts alleged in the Original Gindi Complaint were the basis of a claim or suit. More specifically, in July of 1993, London was made aware that his conduct in regard to his dealings with Gindi in his capacity as an accountant was subject to scrutiny by Gindi and Gindi's counsel. Given that it is undisputed that London was made aware in July of 1993 that his conduct with respect to his dealings with Gindi was the subject of a claim and suit, it is clear to the Court that if London did not actually *know* on November 1, 1994 that the conduct alleged in the Amended Gindi Complaint might form the basis of a claim or suit, a *reasonable* person would have foreseen that the conduct alleged in the Amended Gindi Complaint might form the basis of a claim or suit.

Notably, Camico failed to provide the Court with any argument regarding whether the Prior Notice Exclusion excludes from coverage Gindi's claim against London.[12] Because it is the responsibility of the Court to determine, as a matter of law, whether the undisputed facts eliminate any possibility of coverage, the Court has considered some arguments that Camico could have raised had it been so inclined.

Camico could have argued that given the fact that the Amended Gindi Complaint contains allegations regarding the time period between January 1, 1984 and December 31, 1992, whereas the Original Gindi Complaint contains allegations that only cover the time period between January 1, 1984 and January 31, 1988, London could not have known or reasonably foreseen that the acts that he

---

**12.** Camico failed to mention the Prior Notice Exclusion in either its motion or its reply. The Court was particularly surprised (and disappoint- ed) that Camico made no mention of the exclusion in its reply, given that Coregis focused three pages of its opposition on this argument.

allegedly committed between January 31, 1988 and December 31, 1992 might be the subject of a claim or suit. Despite the apparent logic to this argument, the Court flatly rejects it. First, with the exception of the alleged 1991 misconduct, the Amended Gindi Complaint does not allege any conduct different from that already alleged in the Original Gindi Complaint. Second, Gindi's own deposition testimony refers to the subject of the Amended Gindi Complaint as a continuation of purported misconduct of London alleged in the Original Gindi Complaint. Third, and most importantly, London, more so then any other party involved in this matter, was aware on November 1, 1994 of any and all of his conduct prior to November 1, 1994 and the potential effect any of his actions may have had on Gindi, whether before or after January 31, 1988. Accordingly, the Court finds that on November 1, 1994, London could have reasonably foreseen that any of his actions in connection with Gindi in his capacity as an accountant prior to that time might have formed the basis of a claim or suit.

Camico could also have argued that London could not have known or reasonably foreseen on November 1, 1994 that the alleged 1991 misconduct might form the basis of a claim or suit. The Court finds, without hesitation, that this result was known or could have been reasonably foreseen by London. As articulated above, London was put on notice in July of 1993 that the course of his dealings with Gindi, in his capacity as an accountant, was subject to scrutiny. Additionally, London of course knew the full extent of his involvement in his capacity as an accountant for Gindi. Accordingly, the Court finds that on November 1, 1994, London could have reasonably foreseen that the alleged 1991 conduct might form the basis of a claim or suit.

Based on the foregoing, the Court finds that the two conditions of the Prior Notice Exclusion of the Mt. Airy Policy have been satisfied. While the Court recognizes that the duty to defend is extraordinarily broad in California, the Court is cognizant of the fact that when a policy clearly excludes coverage, the court "will not indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage." *Titan Corp.*, 22 Cal.App.4th at 469, 27 Cal.Rptr.2d 476. Accordingly, because the Court finds that the undisputed facts eliminate any possibility of coverage under the conditions set forth in Exclusion D of the Mt. Airy Policy, the Court DENIES Camico's motion for summary judgment.[13]

## B. Coregis's Motion for Summary Judgment

Coregis's motion for summary judgment seeks an adjudication from this Court that it has no duty to reimburse Camico for any defense and/or indemnity payments incurred by Camico in the Gindi Action on the grounds that there was no coverage under the Mt. Airy policy for the claims asserted against London. For the same reasons that Camico's motion is denied, Coregis's motion is GRANTED. The Court finds as a matter of law that Exclusion D of the Mt. Airy Policy specifically excludes the claim tendered to Coregis in June of 1995.[14]

13. Because the Court has ruled that Exclusion D of the Mt. Airy Policy specifically excludes from coverage the claims asserted against London in the Amended Gindi Complaint, the Court declines to address Coregis's other theories, both of which rely on an expansive reading of *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Insurance Co.*, 5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993), in support of its position that there is no coverage under the Mt. Airy Policy for the Amended Gindi Complaint.

14. The Court notes that Camico's opposition to Coregis's motion for summary judgment provided little more in regard to Exclusion D then did its motion and reply in support of its own motion for summary judgment. The only reference to the existence of Exclusion D in Camico's opposition is as follows: "Coregis has raised a weak argument that the insured knew about the claims prior to the filing of the complaint. This is a totally subjective exclusion which would require testimony by the insured which has not been elicited on this issue, but which would undoubtedly be against Coregis." Camico's opposition to Coregis's motion for summary judgment at 3. The Court finds Camico's unsupported contention to be meritless, as reflected by the Court's discussion above.

The Court also notes that Camico failed to submit a Separate Statement of Genuine Issues of Material Facts in response to Coregis's motion for summary judgment as required by Local Rule

## IV. Conclusion

For all of the reasons set forth above, the Court hereby ORDERS that Camico's motion for partial summary judgment is DENIED and that Coregis's motion for summary judgment is GRANTED.

**SO ORDERED.**

---

7.14.2. The Court recognizes that the two motions at issue were extraordinarily similar in substance, but this does not excuse Camico from complying with the local rules.