[No. A067551. First Dist., Div. Five. Oct. 11, 1995.]

GORDON VANN, Plaintiff and Appellant, v.
TRAVELERS COMPANIES, Defendant and Respondent.

1612

**COUNSEL**

Leandro H. Duran for Plaintiff and Appellant.

Heller, Ehrman, White & McAuliffe, David B. Goodwin, Latham & Watkins, David L. Mulliken, Kristine L. Wilkes, Donna J. Williams and Kristine L. Wilkes as Amici Curiae on behalf of Plaintiff and Appellant.

Sonnenschein, Nath & Rosenthal, Bradley P. MacMillin, Paul E. B. Glad and John Leland Williams for Defendant and Respondent.

Wiley, Rein & Fielding, Laura A. Foggan, Daniel E. Troy, Paul C. Adair and Elliot L. Bien as Amici Curiae.

**OPINION**

**KING, J.**—Gordon Vann, individually and doing business as Vann's Auto Body Shop, Inc., (Vann) brought a declaratory judgment action against its liability insurer, the Travelers Companies (Travelers), seeking a declaration that Travelers was obligated to defend it in connection with a third party action alleging environmental contamination arising out of the operation of Vann's auto body repair business. The trial court granted summary judgment for Travelers (Code Civ. Proc. § 437c), thus relieving it of its duty to defend. We reverse, finding genuine issues of material fact exist as to whether the third party claims potentially come within the terms of the policy, precluding summary judgment for Travelers and triggering its duty to defend.

*Facts*

In July 1991, an action was commenced against Vann on behalf of the estate of Henry Williamson. From at least 1960 until 1992, Vann rented property in Berkeley, California, from Williamson for the operation of his auto body repair business. The complaint alleged that, while operating the business, Vann "improperly handled and disposed of oils, solvents and other substances, which are hazardous under state and federal law" and that as a result, these substances were released "into the soil underlying the property, threatening contamination of groundwater." It was further alleged that Vann "improperly abandoned drums of waste oil and solvents, and improperly disposed [of] waste oil and solvents into a sump and sewer line." The complaint went on to state that the contamination had interfered with Williamson's "ability to use, develop, sell, let or encumber the property" and that Vann should be held liable for the cost of "remov[ing] the aforesaid contamination from the soil and groundwater underlying the property" as well as other damages.

Travelers, which issued liability policies to Vann between 1980 and 1984 promising coverage for damages "caused by an accident and resulting from garage operations," refused to provide a defense to Vann in the Williamson action. This suit for declaratory relief followed. The parties filed cross-motions for summary judgment presenting the narrow issue of whether Travelers owed Vann a duty to defend in the Williamson suit. In awarding summary judgment in favor of Travelers, the trial court ruled that the pollution exclusion clause relieved Travelers of its obligation to defend Vann as a matter of law. The pollution exclusion clause, which will be discussed in greater detail in a later section of this opinion, provides a broad exclusion from coverage for any liability resulting from pollution. Nevertheless, the clause contains an exception to the exclusion which reinstates coverage "if the discharge [was] *sudden and accidental.*" (Italics added.)[1]

In granting Travelers' summary judgment and relieving it of its duty to defend, the trial court reasoned that the release of pollutants was too lengthy to have been "sudden," and therefore, the discharge did not fall within the "sudden and accidental" exception to the pollution exclusion clause. Specifically, the trial court ruled that "sudden and accidental" should be given a "common, ordinary meaning, relating to a release of toxic materials that is short in duration, such as a burst storage tank." The court believed that

[1]The precise language in the Travelers' policies excludes coverage for "bodily injury or property damage caused by the dumping, discharge or escape of irritants, pollutants or contaminants." However, it goes on to provide: "This exclusion does not apply if the discharge is sudden and accidental."

because Vann "intentionally conducted the auto body business and the activities resulting in release of toxic chemicals for at least decades" the release of contaminants was "not sudden." This appeal followed. We review the trial court's decision to grant Travelers' summary judgment de novo. (*City of South Pasadena* v. *Department of Transportation* (1994) 29 Cal.App.4th 1280, 1288 [35 Cal.Rptr.2d 113].)

*The Duty to Defend*

Travelers concedes it has assumed a duty to defend any suit seeking to hold Vann liable for damages or injuries covered under its policies. ▮▮ The Supreme Court held in *Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 303 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (*Montrose I*), and recently reiterated in *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645 [42 Cal.Rptr.2d 324, 897 P.2d 1] (*Montrose II*) that when a suit against an insured alleges a claim that "potentially" or even "possibly" could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate, by reference to "undisputed facts" that the claim cannot be covered. (*Montrose I, supra*, at pp. 299-300; *Montrose II, supra*, at pp. 661-662, fn. 10.)

This broad duty to defend, in turn, shapes each party's burden of proof in seeking summary judgment in a declaratory relief action. "[T]he insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law." (*Montrose I, supra*, 6 Cal.4th at p. 300, italics in original.) A duty to defend does not exist where the underlying complaint " '*can by no conceivable theory raise a single issue which would bring it within the policy coverage.*' " (*Ibid.*, quoting *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276, fn. 15 [54 Cal.Rptr. 104, 419 P.2d 168], italics in original.)

In determining whether a duty to defend exists, courts look to all the facts available to the insurer at the time the insured tenders its claim for a defense. "[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." (*Montrose I, supra*, 6 Cal.4th at p. 299, italics in original.)

The court must look "not to whether noncovered acts predominate in the third party's action, but rather to whether there is *any* potential for liability under the policy." (*Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1084 [17 Cal.Rptr.2d 210, 846 P.2d 792], italics in original.) "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." (*Id.* at p. 1081.)

 In comparing the policy language with the facts pled in the underlying suit, we note the complaint contains only vague allegations concerning the nature of the acts causing the alleged contamination and Vann's knowledge, expectation or intent in connection with such acts. Here, the allegations of Williamson's complaint are certainly broad enough to "raise the possibility" that the environmental contamination alleged in the complaint will fall within the coverage of Travelers' policies, satisfying Vann's burden of showing a "potential" for coverage. (*Montrose I*, *supra*, 6 Cal.4th at p. 304; *Montrose II*, *supra*, 10 Cal.4th at pp. 661-662, fn. 10.)

Travelers responds that it is not obligated to defend Vann because two policy exclusions preclude coverage—the "pollution exclusion" relied upon by the trial court and an "owned property" exclusion. A declaration that there is no obligation to defend Vann could properly be made at this juncture only if Travelers could point to "undisputed" facts extraneous to the allegations of the complaint which "conclusively" demonstrate that there is no "potential for coverage." (*Haskel, Inc.* v. *Superior Court* (1995) 33 Cal.App.4th 963, 975 [39 Cal.Rptr.2d 520].) If extrinsic evidence adduced by Travelers does not "eliminate the possibility" of potential coverage, but instead merely places "in dispute" whether "one or more of the exclusions contained in the policies" apply, summary judgment for Travelers was improperly granted. (*Montrose I*, *supra*, 6 Cal.4th at p. 304.)

*Pollution Exclusion*

 As already noted, the pollution exclusion in Travelers' policies provides coverage for property damage resulting from pollution that is "sudden and accidental." In light of the judge's ruling, the parties on appeal and supporting amicus curiae,[2] have focused their attention on whether the pollution in this case was "sudden and accidental" within the meaning of the language in the insurance policies and which party should bear the burden of proof on this issue.

---

[2]Vann is joined in his arguments by amicus curiae Atlantic Richfield Company, Pacific Gas and Electric Company, Rhone-Poulenc Inc., Varian Associates and Zero Corporation, as well as Montrose Chemical Company. Travelers is joined in its arguments by amicus curiae Insurance Environmental Litigation Association.

Citing the drafting history, Vann contends that "sudden and accidental" does not require a temporal component and can be equated with "unintended and unexpected." Travelers, relying on *Shell Oil Co.* v. *Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715 [15 Cal.Rptr.2d 815] (*Shell Oil*) and its progeny, argues that the phrase "sudden and accidental" necessarily contains a temporal element. (*Id.* at p. 754.)[3] It is premature for this court to address the meaning of the "pollution exclusion" clause. Given the allegations of the underlying complaint, Travelers had a duty to defend Vann under any interpretation of the clause—even if "sudden" is ascribed a temporal aspect to its meaning and not just something unintended and unexpected.

Regardless of which party bears the burden of proof when *indemnification* is at issue, when the *defense* duty is implicated, as in this case, *Montrose* establishes that Travelers is obligated to defend Vann in the underlying Williamson action if there is any *potential* that the release or escape of at least some of the pollutants was "sudden and accidental." This matter can only be deemed amenable to resolution by summary judgment at this stage of the proceeding if Travelers can produce undisputed evidence precluding that possibility. (*Montrose I, supra,* 6 Cal.4th at pp. 304-305, *Montrose II, supra,* 10 Cal.4th at pp. 661-662, fn. 10.) Given Travelers' burden to negate coverage as a matter of law, the facts that it has marshalled in this regard are surprisingly weak.

Travelers points to evidence that Vann routinely sanded and painted cars in an unenclosed area of the shop and took no measures to contain the release and discharge of paint particles. In addition, oil and other fluids from cars being repaired would drain onto the floor of the repair shop. From these facts, along with the identification of the contaminants in the soil as "solvents commonly used in the automotive repair industry," Travelers argues "the contamination alleged in the *Williamson* action is simply the natural product of thirty-eight years of routine sanding, painting and disposal of automotive fluids at the Site."

---

[3]The meaning of "sudden and accidental" in the pollution exclusion clause has been the subject of extensive litigation throughout the country. (See Annot., Construction and Application of Pollution Exclusion Clause in Liability Insurance Policy (1985) 39 A.L.R.4th 1047.) In stark contrast to the differing philosophies found in other jurisdictions, there appears to be a judicial consensus in California (and federal cases interpreting California law) that "sudden" contains a temporal element, so that a " 'discharge, dispersal, release or escape' of pollutants that happens gradually and continuously for years is not 'sudden' in the ordinary and popular sense of the word." (*Shell Oil,* 12 Cal.App.4th at p. 754; accord, *ACL Technologies, Inc.* v. *Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1779-1783 [22 Cal.Rptr.2d 206]; *Truck Ins. Exchange* v. *Pozzuoli* (1993) 17 Cal.App.4th 856, 860 [21 Cal.Rptr.2d 650]; *Smith* v. *Hughes Aircraft Co.* (9th Cir. 1993) 22 F.3d 1432, 1436-1437; *Staefa Control-System* v. *St. Paul Fire & Marine* (N.D.Cal. 1994) 847 F.Supp. 1460.) The issue is currently before this court in *Aerojet-General Corp.* v. *Transport Indemnity Co.* (Nos. A053808; A057812; A059976, app. pending).

We believe the paucity of facts with regard to the circumstances surrounding the contamination—who caused it, when, and exactly how it occurred—simply reflects that the facts underlying the Williamson action were still being developed at the time the summary judgment motions were argued. Discovery had not been completed, experts had not been deposed, and documents had not been completely produced. The federal district court recently reviewed a similar case, in a similar posture, from the standpoint of California law. In *Staefa Control-System* v. *St. Paul Fire & Marine, supra,* 847 F.Supp. 1460 (*Staefa*) Staefa was sued by an adjacent property owner that claimed its soil and the groundwater had been contaminated by pollutants migrating from Staefa's property. Staefa tendered the defense of this third party action to its insurer which denied the defense on the grounds there was no evidence of a "sudden accident" within the terms of the pollution exclusion contained in its policies. (*Id.* at p. 1466.) Upon cross-motions for summary judgment on the duty to defend, the district court surveyed California law and concluded that a "sudden accident" as used in the pollution exception had a temporal connotation. (*Id.* at p. 1468.) The court also concluded the temporal requirement applied only to the initial polluting event and that coverage could potentially extend to a gradual migration of pollutants that was caused by a sudden accident. (*Id.* at p. 1469.) The court granted Staefa's summary judgment motion finding a duty to defend existed because "discovery in the underlying matter is far from complete, and it is therefore possible that evidence will yet turn up revealing that a sudden accident caused the pollution." (*Id.* at p. 1470.)

We agree with *Staefa* that the fact that the discharge of pollutants occurred over a lengthy period of time does not automatically mean that the suddenness element cannot be met, and it was wrong for the trial court to decide the case solely on that basis. The pollution exclusion clause, together with the exception contained in it, can cover a wide variety of circumstances. As the court noted in *Shell Oil,* " 'sudden' refers to the pollution's commencement and does not require that the polluting event terminate quickly or have only a brief duration." (*Shell Oil, supra,* 12 Cal.App.4th at p. 756.) For example, a "sudden and accidental discharge of a dangerous pollutant could continue unabated for some period because of a negligent failure to discover it, technical problems or a lack of resources that delay curtailment, or some other circumstance. Liability from such an event could well be covered." (*Ibid.*)

We conclude that the record in this case does not permit an informed resolution whether the commencement of any of the pollution in question was abrupt, and therefore, does not establish enough facts to warrant decision of the "suddenness" issue. The record at this stage of the proceeding

provides nothing which conclusively explains the source of the contamination, or whether the release of pollutants came about exclusively as the result of the routine disposal of the hazardous byproducts of Vann's auto body shop or, in part, by a condition that developed so rapidly it could properly be described as a "sudden" event. "Under the law of this state, we must resolve the uncertainty [in the record] in the insured's favor. [Citation.]" (*Horace Mann Ins. Co.* v. *Barbara B.*, *supra*, 4 Cal.4th at p. 1084.)

The issue is further clouded by an expert report that was completed after Travelers was granted summary judgment in this matter.[4] The report was prepared by an engineering expert and indicates that at least some of the pollution at the Williamson site might have been caused by fluids, such as gasoline and oil, leaking from automobiles being stored or repaired; that hazardous chemicals might have been accidentally spilled at the site; and that chemical residues on the floors might have been washed into the sumps as a result of roof leakage. We also take judicial notice of the amendment of the Williamson action since summary judgment was granted, naming two more defendants, raising the possibility that other parties might be responsible for the contamination and alleging a sudden and accidental discharge of pollutants. (Evid. Code, § 459.)

Until all the facts in this case are fully developed, the record certainly raises the possibility that at least a portion of the damage alleged in the Williamson action was potentially covered under the policies issued to Vann; and Travelers has failed to submit any evidence precluding that possibility. Consequently, Travelers has not satisfied its burden of proving as a matter of law that coverage is precluded. Therefore, summary judgment was not proper.[5]

*Owned Property Exclusion*

■ As an independent ground for upholding the trial court's grant of summary judgment, Travelers argues that coverage is precluded because its policies contain an exclusion for damage "to property owned . . . by the Insured or in the Insured's care, custody or control." We note at the outset that Williamson's complaint alleges threatened contamination of the groundwater beneath Williamson's property. Allegations of potential groundwater contamination may reasonably be read to include concerns for off-site contamination and such allegations are thus not necessarily limited to property occupied or controlled by Vann. Even if off-site migration has not yet

---

[4]We granted Vann's motion to augment the record on appeal with this report.

[5]Because Travelers has a duty to defend under the "property damage" coverage it provided, it is not necessary for this court to decide whether Travelers also has a duty to defend under the "personal injury" coverage.

occurred, as Travelers emphasizes, we do not believe that the standard "owned property" exclusion should automatically defeat coverage in suits seeking "cleanup" costs designed to prevent damage to third parties. In the unique context of environmental contamination, where immediate corrective action can be far more economical than remediation and restoration of polluted property and groundwater, it serves no legitimate purpose to assert that off-site migration and groundwater pollution must actually occur before it can be said there is a potential for coverage. (See *Shell Oil, supra,* 12 Cal.App.4th at pp. 758-759.)

*Conclusion*

Undoubtedly, genuine factual disputes remain as to the cause and extent of the alleged contamination of Williamson's property. The possibility that, as these facts evolve, Vann's actions will fall squarely outside the scope of the policies' coverage cannot be foreclosed. All that has been decided by this court at this juncture is that there is a possibility of coverage, and that the evidence adduced by Travelers did not eliminate that possibility—thus triggering Travelers' duty to defend. (See *Montrose I, supra,* 6 Cal.4th at p. 304.)[6]

The judgment is reversed. The parties will bear their own costs on appeal (Cal. Rules of Court, rule 26(a)).

Peterson, P. J., and Haning, J., concurred.

---

[6]On remand, the judge should consider an additional issue briefed by the parties—whether Vann is entitled to pre-tender defense expenses. The trial court did not reach that issue because it found Travelers had no duty to defend Vann based on the exclusion for all pollution that was not "sudden and accidental." Nevertheless, the court was mindful that "if it is found to be incorrect on the interpretation of 'sudden and accidental' " an examination of that evidence "in detail" would have to be made.