Filed 3/19/18; Certified for publication 4/17/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALL GREEN ELECTRIC, INC., | B279456 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC601672) |
| v. | |
| SECURITY NATIONAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Lang, Hanigan & Carvalho and Timothy R. Hanigan for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Lane J. Ashley and Jordon E. Harriman for Defendant and Respondent.

\* \* \* \* \* \*

Plaintiff and appellant All Green Electric, Inc. (All Green), appeals from a grant of summary judgment in favor of its insurer, defendant and respondent Security National Insurance Company (SNIC). All Green requested that SNIC defend a lawsuit alleging that All Green negligently installed electrical equipment for a medical scanner. The trial court concluded that the lawsuit fell under a coverage exclusion for loss of use of property caused by a deficiency in All Green's work, and SNIC had no duty to provide a defense. We affirm.

## BACKGROUND

### 1. The Jacobs Lawsuit

In March 2012, J. Bruce Jacobs, a medical doctor, hired All Green to perform electrical work as part of the construction of Jacobs's MRI and X-ray facility, including running power and outlets to a room in which a mammography unit was to be installed by Hologic, Inc. (Hologic). Hologic installed the unit but then discovered it was not operating correctly due to a magnetic field in the room. Hologic advised Jacobs to install the unit in a different room, and Jacobs retained All Green to run power to that room as well.

Despite the move to the second room, the magnetic field persisted and the unit continued to malfunction. Jacobs hired MRI Corporation to install steel shielding in the second room, but the magnetic field continued to interfere with the operation of the unit.

Jacobs then hired an electromagnetic field expert who determined that the magnetic field was caused by a loose bolt in an electrical cabinet installed by All Green. When the bolt was tightened, the magnetic field instantly disappeared.

Jacobs filed a complaint against All Green, Hologic, and MRI Corporation. Jacobs asserted one cause of action for negligence against All Green, alleging that All Green breached its duty of care "by failing to properly install all the electrical components relating to the Project including, without limitation, failing to tighten one of the bolts in the utility cabinet installed by All Green." Jacobs alleged that this negligence resulted in a magnetic field that "interfered with the operation of" the mammography unit and "threatened the health of all persons in the facility." Jacobs sought damages, including costs for unnecessary modifications and repairs, payments to outside sources for substitute mammography testing, operational costs and expenses, damage to Jacobs's reputation, lost profits, and the loss of Jacobs's HMO contract.

## 2. SNIC's Denial of All Green's Claim

All Green tendered defense of the lawsuit to its insurer, SNIC, with whom it had policies covering liability for bodily injury and property damage. All Green's owner informed SNIC's senior claims examiner that All Green denied the allegations in the complaint, that all the bolts had been properly tightened, and that All Green's work had passed two inspections.

SNIC ultimately denied All Green's claim on the basis of the "impaired property" exclusion in All Green's policies.[1] The exclusion, titled in the policies as "Damage To Impaired Property

---

[1] The impaired property exclusion "bars coverage for liability arising out of a defect in a contractor's work or failure to perform a contract that renders other property *useless or less usable*." (Croskey et. al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2017) ¶ 7:1484.2, p. 7E-52.) It does not apply when property has been physically injured. (*Id.* at ¶ 7:1484.3.)

3

Or Property Not Physically Injured," states that the policies do not apply to " 'Property damage' to 'impaired property' or property that has not been physically injured, arising out of:  [¶] (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work;' or  [¶]  (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms."  The provision further states that "[t]his exclusion does not apply to the loss of use of other property arising out of the sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use."

The policies define "impaired property" as "tangible property, other than 'your product' or 'your work,' that cannot be used or is less useful because:  [¶]  a.  it incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or  [¶]  b.  You have failed to fulfill the terms of a contract or agreement;  [¶]  if such property can be restored to use by the repair, replacement, adjustment or removal of 'your product' or 'your work' or your fulfilling the terms of the contract or agreement."  As relevant here, "your work" is defined as "[w]ork or operations performed by you or on your behalf" as well as "[m]aterials, parts or equipment furnished in connection with such work or operations."

SNIC's denial letter explained that the mammography unit was "impaired property" in that it "could not be used because All Green failed to fulfill the terms of its contract (by tightening the bolt and/or meeting the standard of care)," but could be "restored to use by simply tightening the bolt, i.e., by 'adjustment' of All Green's work."  Alternatively, the unit was "property that was not physically injured."  The exclusion applied because "[t]he

4

failure to tighten the bolt was a 'defect, deficiency, inadequacy . . . in . . . "your work" '." The letter further concluded that the exception for "sudden and accidental physical injury" to All Green's work did not apply because there had been no physical injury, and the fact that the bolt was loose was not sudden or a result of an event that occurred after it was "put to its intended use."

## 3. Proceedings below

All Green filed a complaint against SNIC seeking a declaratory judgment that SNIC had a duty to defend All Green in the Jacobs lawsuit. The complaint also alleged breach of contract and breach of the implied covenant of good faith and fair dealing.

SNIC moved for summary judgment, arguing that the impaired property exclusion applied. There were no disputed facts in the parties' separate statements.

The trial court granted summary judgment in favor of SNIC, finding that the damages claimed in the Jacobs lawsuit fell under the impaired property exclusion. The court stated that the Jacobs lawsuit "claims negligence on the part of [All Green] for failure to tighten a bolt that resulted in loss of use of the mammogram machine. That is property damage (loss of use) to impaired property (property that cannot be used which incorporates [All Green's] work thought to be deficient) which arose out of the alleged deficient work." As to All Green's contention that it was not at fault, the court said "whether [All Green] ultimately prevails in the underlying action has no bearing on whether the claim itself is covered by the policy."

All Green timely appealed.

# DISCUSSION

## 1. Applicable law

"[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 (*Horace Mann*).)  " '[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.' " (*Ibid.*)  "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy.  Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."  (*Ibid.*)

"The insurer's defense duty is obviated where the facts are undisputed and conclusively eliminate the potential the policy provides coverage for the third party's claim.  [Citation.]  An insurer is entitled to summary judgment that no potential for indemnity exists if the evidence establishes no coverage under the policy as a matter of law.  [Citation.]  We review an order granting summary judgment de novo ' " 'when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.' " ' "  (*Regional Steel Corp. v. Liberty Surplus Ins. Corp.* (2014) 226 Cal.App.4th 1377, 1389 (*Regional Steel*).)

"A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish," ' the elements of his or her cause

of action." (*Zubillaga v. Allstate Indemnity Co.* (2017) 12 Cal.App.5th 1017, 1026.)

## 2. Analysis

In its opening brief, All Green primarily argues that SNIC failed to establish the applicability of the impaired property exclusion. In its reply, it focuses on the exclusion's exception for "sudden and accidental physical injury" to All Green's work "after it has been put to its intended use," and argues that SNIC failed to establish that the exception did not apply. We reject both arguments.

### a. Impaired property exclusion

All Green does not dispute that if a failure to properly install the bolt and other electrical components led to the loss of use of the mammography unit, the impaired property exclusion would bar coverage for the damages claimed in the Jacobs complaint. But All Green contends that there were other possible reasons the bolt could have been loose independent of any negligence on All Green's part; All Green suggests a truck could have hit the electrical cabinet, or vandals or an earthquake could have damaged it. All Green argues that if it was not negligent or otherwise deficient in the performance of its contract, then the elements of the impaired property exclusion would not be met and SNIC would have a duty to defend.

We disagree. The duty to defend arises if a lawsuit creates "a potential for indemnity," that is, a potential for liability of a sort covered under the policy. (*Horace Mann, supra*, 4 Cal.4th at p. 1081.) If there is no possibility of such liability, then there is no possibility of coverage and no corresponding duty to defend. Here, the only liability alleged in the complaint was a type not covered by the policy: the mammography unit's temporary

7

malfunction (loss of use) as a result of All Green's purported failure to properly install the bolt and other electrical components (a deficiency in All Green's work). All Green proposes no possible theory under which All Green would be subject to liability covered by the policy under these circumstances, nor can we conceive of any. (See *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275, fn. 15 (*Gray*) ["[T]he insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage."].) Thus, it is undisputed that if Jacobs's allegations against All Green were found true, SNIC would not have to indemnify.

Nor would SNIC have to indemnify if, as All Green contended to SNIC's claims examiner, All Green's work was done properly and it was not responsible for the loose bolt. In such a circumstance, All Green would not be liable to Jacobs and there would be nothing to indemnify. Even if All Green is technically correct that its lack of negligence negates the impaired property exclusion, it would not give rise to a duty to defend because the lack of negligence would also negate All Green's liability.

*State Farm Fire & Casualty Co. v. Drasin* (1984) 152 Cal.App.3d 864 (*Drasin*) is analogous. The Drasins were sued for malicious prosecution by a business partner. (*Id.* at p. 866.) They requested defense from their homeowner's insurance carrier, State Farm, which sought a declaratory judgment that it had no duty to defend or indemnify. (*Id.* at pp. 866-867.) The Court of Appeal affirmed summary judgment for State Farm. (*Id.* at p. 870.) The court concluded that because liability for malicious prosecution requires a finding of malice, indemnity was barred by Insurance Code section 533, which states that "[a]n

8

insurer is not liable for a loss caused by the wilful act of the insured . . . ." (*Drasin, supra*, at pp. 867-868, citing *Maxon v. Security Ins. Co.* (1963) 214 Cal.App.2d 603.) On this basis, the court held that the complaint "does not potentially seek damages that come within the coverage of the subject policy. If the Drasins' original action against [the business partner] is held to be without malice and therefore not wilful, then there is no liability under the policy. Similarly, if the Drasins' original action against [the business partner] is held to be wilful and with malice, again there is no liability under the policy." (*Drasin, supra*, at p. 868.) Because " '[t]he obligation to defend is predicated upon liability for the loss covered by the policy,' " and there was no possibility of such liability, there was no duty to defend. (*Id.* at pp. 868-869, italics omitted.)

*Drasin* supports the trial court's conclusion here that "whether [All Green] ultimately prevails in the underlying action has no bearing on whether the claim itself is covered by the policy." Because SNIC would have no obligation to indemnify regardless of whether All Green was negligent, either because there was no liability or because the liability fell under the impaired property exclusion, SNIC had no duty to defend.

All Green argues that SNIC's coverage counsel was unable in deposition to provide any facts supporting his conclusion that the impaired property exclusion applied. All Green further argues that SNIC was aware of extrinsic facts suggesting the exclusion did not apply, namely All Green's assurances that the work was completed adequately and had passed two inspections. Thus, All Green contends, SNIC could not conclusively establish that the impaired property exclusion applied.

9

These arguments are unavailing. SNIC was entitled to assess its duty to defend based on the allegations in the complaint and any extrinsic facts that "reveal a possibility that the claim may be covered by the policy." (*Horace Mann, supra*, 4 Cal.4th at p. 1081.) The complaint did not give rise to any covered liability. And the only "facts" All Green contends should have been considered are denials of liability or evidence of due care that, if true, would also obviate coverage. (See *Drasin, supra*, 152 Cal.App.3d at p. 868.) Although a duty to defend arises "[i]f any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy" (*Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 655), here neither the complaint nor the purported facts offered by All Green suggest a coverable claim.

### b. *Exception for sudden and accidental physical injury*

In its reply brief, All Green turns its focus to the exception to the impaired property exclusion—for "sudden and accidental physical injury" to All Green's work "after it has been put to its intended use"—and argues that SNIC has failed to establish that the exception does not apply.[2] We disagree.

To the extent All Green is suggesting that its work could have suffered a sudden and accidental physical injury caused by someone or something other than All Green (such as the

---

[2] All Green, as the insured, bears the ultimate burden of proving at trial that an exception to a coverage exclusion applies. (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1192.) We need not decide whether that same burden applies on summary judgment; SNIC prevails even if it bears the burden.

10

aforementioned truck, vandals, or earthquake),[3] this is simply retreading the argument that it was not All Green's negligence that caused the mammography unit to malfunction. As discussed above, under this circumstance there would be no liability and thus no indemnity and corresponding duty to defend.

But in its reply brief All Green suggests some additional scenarios in which All Green could have properly installed the bolt, but itself later inadvertently damaged the electrical cabinet and knocked the bolt loose. All Green proposes that All Green's owner could have returned to Jacobs's facility after the work was completed and "tripped and accidentally banged into the cabinet" or one of All Green's workers involved with a different project at the facility "could have hit the electrical cabinet with a ladder or other heavy equipment."[4] Although All Green does not so state, presumably it means to propose scenarios in which All Green's negligence is the cause of the "sudden and accidental physical injury," in which case its liability arguably could be covered by SNIC's policies.

But the allegations in the complaint and the extrinsic facts in the record do not "reveal a possibility" (*Horace Mann, supra*, 4 Cal.4th at p. 1081) that these scenarios occurred. The complaint

---

[3] All Green does not cite case law or other authority concerning the "sudden and accidental physical injury" exception and does not explain how any of its proposed scenarios fall within it. We assume without deciding that these scenarios would fall within the exception if they occurred.

[4] Again, we assume without deciding that these scenarios would fall within the exception if they occurred and further assume that but for that exception these scenarios would be subject to the impaired property exclusion.

does not allege that All Green negligently damaged its work after installing it; it alleges that All Green "fail[ed] to properly install all the electrical components relating to the Project including, without limitation, failing to tighten one of the bolts in the utility cabinet installed by All Green." These allegations do not encompass the possibility that All Green properly installed the bolt but later knocked it loose.

Nor has All Green identified any extrinsic facts suggesting it damaged the electrical cabinet after the work was complete, suddenly and accidentally or otherwise. When assessing the duty to defend, " '[t]he ultimate question is whether the facts alleged [or known] "fairly apprise" the insurer that the suit is [or could be] upon a covered claim.' " (*Shanahan v. State Farm General Ins. Co.* (2011) 193 Cal.App.4th 780, 786 (*Shanahan*).) " '[T]he insurer has no duty to defend where the potential for liability is " 'tenuous and farfetched.' " ' " (*Ibid.*)

The only extrinsic facts All Green has identified are its owner's statements to SNIC that All Green performed the work properly and passed two inspections. While this information certainly called All Green's liability for poor workmanship into question, it did not " ' "fairly apprise" ' " SNIC that All Green might have otherwise damaged the electrical cabinet after the work was complete. (*Shanahan, supra*, 193 Cal.App.4th at p. 786.) Indeed, All Green's owner expressly denied any negligence, telling SNIC that he "did not do anything wrong in connection with the Project, and that All Green's work on the Project did not cause the electrical problems alleged in the Jacob[s] Complaint." Far from implying any liability on All Green's part, these statements instead would suggest to SNIC that All Green had nothing at all to do with the damages claimed

12

by Jacobs.  Under these circumstances, the possibility that All Green had later damaged the otherwise properly installed cabinet and bolt was too " ' " 'tenuous and farfetched' " ' " to impose a duty to defend on SNIC.  (*Ibid.*)

All Green contends that to defeat summary judgment it "need only provide *any conceivable theory* whereby the claim could have been covered under the policies."  But that theory must be based on the allegations in the complaint or extrinsic facts known to the insurer at the start of the underlying lawsuit.  (*Horace Mann, supra*, 4 Cal.4th at p. 1081; see *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 [existence of duty to defend turns on " 'those facts known by the insurer at the inception of a third party lawsuit' "].)  All Green points to no authority permitting an insured to manufacture hypothetical scenarios beyond those encompassed by the pleadings or the facts known to the insurer in order to give rise to a duty to defend.  But that is precisely what All Green is attempting here.

*Gray, supra*, 65 Cal.2d 263, a seminal duty-to-defend case cited extensively by All Green, does not support its position.  *Gray* held that an insurer had a duty to defend a lawsuit alleging an intentional assault, despite a coverage exclusion for intentional torts, because the allegations could support a judgment that the conduct was unintentional.  (*Id.* at p. 276.)  The duty to defend depended on the facts of the case, not the theory of recovery:  "In light of the likely overstatement of the complaint and of the plasticity of modern pleading, we should hardly designate the third party as the arbiter of the policy's coverage."  (*Ibid.*)

13

This holding is inapplicable here.  In *Gray*, the allegation that the insured physically attacked someone could support numerous possible theories of liability, including intentional assault and negligence.  Under those circumstances, the insurer could not deny a defense simply because the complaint chose to pursue only one of those theories.  Here, in contrast, we are not presented with allegations or facts that under an unpleaded theory might give rise to liability.  Under any theory, All Green's failure to install the bolt properly would bar coverage under the policy.  And there were no extrinsic facts suggesting All Green might have been negligent in some other, coverable respect that might be added to the complaint at a later time.

At oral argument, All Green's counsel emphasized *Vann v. Travelers Companies* (1995) 39 Cal.App.4th 1610 (*Vann*), but this case is also unavailing.  In *Vann*, an insurer, citing a coverage exclusion for liability resulting from pollution, refused to provide a defense to an auto body shop in a lawsuit alleging that the shop had " 'improperly handled and disposed of' " various hazardous substances.  (*Id.* at p. 1613.)  The Court of Appeal reversed a grant of summary judgment in favor of the insurer, in part because the pollution exclusion contained an exception for sudden and accidental discharges.  (*Id.* at pp. 1612-1613, 1618.)  The court "note[d] the complaint contain[ed] only vague allegations concerning the nature of the acts causing the alleged contamination and [the insured's] knowledge, expectation or intent in connection with such acts."  (*Id.* at p. 1615.)  Thus, the allegations were "certainly broad enough to 'raise the possibility' that the environmental contamination alleged in the complaint will fall within the coverage of [the insurer's] policies."  (*Ibid.*)  Because the insurer had not "produce[d] undisputed evidence

14

precluding that possibility," summary judgment was improperly granted.  (*Id*. at p. 1616.)

*Vann* is distinguishable from the case here.  In *Vann*, the complaint was broad, alleging the insured had released pollutants without indication of how, when, or why.  Under those purported facts, the insurer was on notice of the possibility that the discharge might have been sudden and accidental, just as it might have also been intentional.  The insured did not have to invent facts to fit its potential liability within the terms of the insurance policy; the existing allegations were sufficient for that purpose.  Here, in contrast, the complaint specifically alleges that All Green's negligence occurred when installing the bolt in the first place, with no suggestion that it might have happened later.  There were no facts known to SNIC indicating that All Green had been negligent in some other way.  Thus, there was no potential for covered liability creating a duty to defend.

### c.  *Additional claims*

The trial court also properly granted summary judgment on All Green's claim for breach of contract; SNIC could not breach an obligation it did not have.  The lack of an underlying contractual obligation also precluded a claim under the implied covenant of good faith and fair dealing.  (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 ["It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer."].)  The trial court properly granted summary judgment on that claim as well.

15

## DISPOSITION

The judgment is affirmed.  SNIC is entitled to costs on appeal.


                                        HALL, J.*

WE CONCUR:


        BIGELOW, P. J.


        RUBIN, J.

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALL GREEN ELECTRIC, INC., | B279456 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC601672) |
| v. | |
| SECURITY NATIONAL INSURANCE COMPANY, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:*

The opinion in the above-entitled matter filed on March 19, 2018, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

_____

\*       BIGELOW, P. J.        RUBIN, J.        HALL, J.\*\*

\*\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.